Quinn, J.
(dissenting). The defendant, at midmorning of an April day, dressed in a brown army jacket, was observed by a uniformed police officer, on foot patrol, to emerge, with a male companion, from a supermarket in a high-crime area in upper Manhattan. An unknown, unidentified male came to the police officer and told him that the defendant, then in view, walking west, whom he described as the one wearing* the brown jacket, had a gun on him. The nameless informant then made off, leaving the police officer to make a quick decision: Should he seek to detain his informant for more detailed questioning while the purported gun-toter disappeared? Should he shrug his shoulders in. apathetic disregard of uncorroborated information and let the purported gun-toter go about his business, no matter *935 how lethal it might be? Should he take off after the purported gun-toter and ask him to stop for questioning with a possible fatal bullet for an answer? Or, relying on his police expertise in street scene characters and incidents, should he trust to his unarticulated, visceral reaction and on-sight appraisal of his fleeting informant’s reliability and improvise the quickest, safest, most reasonable stop-and-frisk of the rapidly retreating suspect the exigent circumstances seemed to afford? People v. Taggart (20 N Y 2d 335) would-seem to approve his choice of the last-named course.
In that case a police officer, relying on an anonymous telephone caller’s information that a described individual at a specified place had a gun in his pocket, went ,to the location, and without a word of inquiry or attempt at .a frisk, stuck his hand in the suspect’s pocket and seized a gun. That search and seizure were upheld as reasonable.
At least here the police officer had the advantage of seeing his informant face .to face with the opportunity in some degree at least, of forming an impression, from those intangible telltales of character, such as voice, facial expression, gestures, intensity of emotional projection, and general appearance, of the extent to which his informant could be trusted as a truth teller; and the further advantage of a direct, pointed, in-view identification of the suspect to go by.
At least here the police officer prefaced his search by a simultaneous stop-and-frisk executed in one waist-encircling maneuver from the rear in which his arm encountered a hard bulge at the front of defendant’s belt line. Later search revealed the hard bulge friskly felt through defendant’s outer clothing to be a gun.
The defendant’s argument on this appeal and the decision of the trial court on the motion to suppress, with which the majority of this court now agrees, strongly imply that if the police officer had come from behind with drawn pistol and upon overtaking the defendant had said .something such as, “Freeze! Police! I have you covered! ” And if defendant, believing, obeyed, then patting down the defendant’s outer clothing in the classic, movie method of frisking, would have made discovery of the defendant’s gun the result of a reasonable stop-and-frisk. But what if the suspected gun-toter failed to freeze ? If he whirled around, or started to swerve or run, what of the police officer’s dilemma then? Shoot to protect himself? To prevent the escape of the fleeing suspect? Or put up his pistol and resign the field upon an instantaneous reweighing of the factors of articulable sus *936 picion, and danger to passersby on the public street, in light of the suddenly much more ponderous question, to shoot or not to shoot?
The police officer’s judgment in the rapid kinetics of the suddenly developing situation that the stop-,and-frisk could most immediately, effectively and automatically and most safely be accomplished by a waist-encircling embrace from the rear, should not be faulted on the basis of ivory-tower speculations, of dubious validity, that some other more conventional modus operandi might be more conducive to the continued well-being of the police officer, the suspect and the public, or less offensive to the dignity of the human person and thus, in the abstract, more deserving of being called reasonable.
Here was an articulable suspicion of a crime of violence giving rise to a reason to stop and the right to an immediate and automatic frisk (Terry v. Ohio, 392 U. S. 1, 33). Here was the element of danger upon which to justify physical action, such as a frisk, first, and questioning afterward (People v. Rosemond, 26 N Y 2d 101).
The teaching of People v. Taggart (supra) ; People v. Arthurs (24 N Y 2d 688), People v. Rosemond (supra) ; People v. Mack (26 N Y 2d 311) and, most recently, People v. Hudson, (27 N Y 2d 911, affirming, without opinion, the affirmance by this court, without opinion, of an order of the Criminal Court of the City of New York denying a motion to suppress) impels the conclusion that defendant, relying on the testimony of the police officer as sole witness, failed to sustain his burden of preponderantly showing that, under all the exigent circumstances, the sudden, bear hug frisk of his person by the police officer approaching from his rear, was unreasonable.
The order appealed from should be reversed, and the motion to suppress denied.
Lupiano, J., concurs with opinion by Gold, J.; Quinn, J,. dissents in opinion.
Order affirmed, etc.